# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

SEAN MCHUGH,

Defendant.

Criminal Action No. 21-453 (JDB)

## MEMORANDUM OPINION

Defendant Sean McHugh is charged by indictment with eight felonies and two misdemeanors in connection with his conduct at the United States Capitol on January 6, 2021. See Superseding Indictment [ECF No. 39]. Currently before the Court is a renewed Motion to Dismiss Count Five of the Superseding Indictment, which charges McHugh with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2). Relying almost entirely on Judge Carl Nichols's recent opinion in United States v. Miller, Crim. A. No. 1:21-cr-00119 (CJN), 2022 WL 823070 (D.D.C. Mar. 7, 2022), McHugh argues that § 1512(c)(2) prohibits only obstruction that occurs "with respect to a document, record, or other object." Def.'s Mot. to Dismiss Count Five of the Superseding Indictment [ECF No. 54] ("Def.'s Renewed Mot.") at 4; see also Miller, 2022 WL 823070, at *15. The Court disagrees. For the reasons set forth below, the Court reiterates its conclusion that 18 U.S.C. § 1512(c)(2) is a broad prohibition on all forms of obstruction and, accordingly, that Count Five of the Superseding Indictment properly states a claim.

## Background

The facts underlying the Superseding Indictment are set out in detail in the Court's prior memorandum opinion denying McHugh's first motion to dismiss. United States v. McHugh, Crim. A. No. 21-453 (JDB), 2022 WL 296304, at *1–3 (D.D.C. Feb. 1, 2022) ("McHugh I"). In short, McHugh is alleged to have been an active participant in the riot at the United States Capitol on

1

January 6, 2021, and he has now been charged with eight felonies and two misdemeanors arising from his conduct on that day.  See Superseding Indictment [ECF No. 39]; McHugh I, 2022 WL 296304, at *3.  Among other things, McHugh is accused of using a megaphone to encourage and direct other rioters, assaulting law enforcement officers with a large metal sign, and spraying multiple officers with bear spray.  See McHugh I, 2022 WL 296304, at *2; see also Gov't's Opp'n to Def.'s Renewed Mot. [ECF No. 57] ("Gov't Opp'n) at 3; Gov't's Resp. in Opp'n to Def.'s Mot. to Dismiss [ECF No. 42] ("Original Gov't Opp'n") at 4–11.

On December 2, 2021, McHugh moved to dismiss five of the felony counts against him on a variety of constitutional and statutory grounds.  See McHugh I, 2022 WL 296304, at *3 (summarizing grounds); see generally Def.'s Mot. to Dismiss Counts Two, Five, Six, Seven, and Eight of the Superseding Indictment [ECF No. 41] ("Def.'s First Mot. to Dismiss").  As relevant here, McHugh sought the dismissal of Count Five on the grounds that the joint session of Congress on January 6th was not an "official proceeding" and that § 1512(c)(2) is unconstitutionally vague. Def.'s First Mot. to Dismiss at 3–17.  McHugh also briefly suggested, without argument, that § 1512(c)(2) requires "the charged conduct [to] have some reasonable nexus to a record, document or tangible object, or to witness testimony."  Id. at 6 (internal quotation marks and citations omitted).  This Court denied McHugh's motion in full on February 1, 2022, see McHugh I, 2022 WL 296304, at *4–22, noting in a footnote its disagreement with McHugh's nexus-to-evidence assertion, id. at *4 n.5.

On March 15, 2022, McHugh renewed his motion to dismiss, this time only with respect to Count Five and arguing explicitly (and exclusively) that § 1512(c)(2) applies only to obstructive acts related to documents, records, or other objects (and thus not to his alleged conduct).  See generally Def.'s Renewed Mot.  McHugh relies entirely on the reasoning of United States v. Miller,

in which Judge Carl Nichols of this District adopted this narrower interpretation of § 1512(c)(2). See Miller, 2022 WL 823070, at *15 (holding that § 1512(c)(2) applies only to "defendant[s] [who] have taken some action with respect to a document, record, or other object."). McHugh asks this Court to adopt Judge Nichols's reasoning, apply it in this case, and dismiss Count Five. See Def.'s Renewed Mot. at 1. The government submitted an opposition to McHugh's renewed motion on April 5, see generally Gov't Opp'n, and McHugh filed his reply on April 28, see Def.'s Reply in Further Supp. of Def.'s Renewed Mot. [ECF No. 62] ("Def.'s Reply"). Briefing is therefore complete, and the motion is ripe for decision.

## Legal Standard

A defendant in a criminal case may move to dismiss the indictment against him on the ground that it "fail[s] to state an offense," Fed. R. Crim. P. 12(b)(3)(B)(v), including because the statutory provision at issue does not apply to the charged conduct, e.g., United States v. Montgomery, Crim. A. No. 21-46 (RDM), 2021 WL 6134591, at *1 (D.D.C. Dec. 28, 2021). "In deciding a motion to dismiss an indictment, the question before the Court is a narrow one, and the court will neither review the sufficiency of the evidence against the defendant nor craft jury instructions on the elements of the crimes charged." McHugh I, 2022 WL 296304, at *3 (cleaned up; citation omitted). Instead, "the court determines only the 'legal sufficiency of the indictment,'" id. (citation omitted), and must assume the truth of the government's proffered facts, see United States v. Ballestas, 795 F.3d 138, 149 (D.C. Cir. 2015). Because a court's "'use of its supervisory power to dismiss an indictment directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances." Ballestas, 795 F.3d at 148 (D.C. Cir. 2015) (cleaned up) (quoting Whitehouse v. U.S. Dist. Ct., 53 F.3d 1349, 1360 (1st Cir. 1995)).

## Analysis

Section 1512(c) provides in full:

Whoever corruptly--

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c). The question presented here is whether paragraph (c)(2) applies to <u>any</u> act that "obstructs, influences, or impedes" an official proceeding, or if it encompasses only obstructive acts of a type similar to those proscribed in paragraph (c)(1), <u>i.e.</u>, actions taken with respect to a record, document, or other object.[1]

McHugh urges the Court to adopt the latter position and construe § 1512(c)(2) narrowly, relying exclusively on Judge Nichols's decision in <u>Miller</u>. <u>See</u> Def.'s Renewed Mot. at 1.[2] To the Court's knowledge, two other district courts have also adopted this view of the statute. <u>See</u> <u>United States v. Singleton</u>, Crim. A. No. H-06-080, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006); <u>United States v. Hutcherson</u>, No. CRIM. 6:05-CR-00039, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006).

The government, on the other hand, argues for a broader interpretation, construing § 1512(c)(2) to apply to all forms of corrupt obstruction of an official proceeding. <u>See</u> Gov't Opp'n at 11–22; <u>see also</u> Original Gov't Opp'n at 13–23. Seven judges in this District, including

---

[1] Under either interpretation, of course, the defendant must still act "corruptly," <u>i.e.</u>, with specific obstructive intent, and his "conduct must have the natural and probable effect of interfering with an official proceeding and the accused must have known that his actions were likely to affect a particular proceeding." <u>E.g.</u>, <u>McHugh I</u>, 2022 WL 296304, at *11 (internal quotation marks and citation omitted).

[2] Because McHugh's renewed motion adopts the reasoning of <u>Miller</u> wholesale, the Court will grapple with Judge Nichols's thoughtful analysis directly rather than filtering that analysis through McHugh's short motion.

4

this one, have adopted this interpretation in January 6th cases,[3] and in the weeks since Miller was decided, two more have signaled disagreement with its interpretation in the course of rejecting vagueness challenges to § 1512(c)(2).[4]  In addition, Judge Friedrich has indicated in a substantial oral opinion that she is "not inclined to reconsider" her interpretation of § 1512(c)(2) in light of Miller.  See Trial Tr., Mar. 8, 2022, at 1502:20–1505:22, United States v. Reffitt, Crim. A. No. 21-32, ECF No. 145.  Several other courts around the country have previously adopted this broad interpretation,[5] and many circuits have upheld convictions under § 1512(c)(2) where the conduct in question had no connection to documents or other physical evidence.[6]

This Court's previous two discussions of § 1512(c)(2) were rather abbreviated.  In McHugh I, the Court adopted the broad interpretation of the statute only in a footnote and without the benefit of briefing by the defendant.  2022 WL 296304, at *4 n.5.  The Court then reaffirmed its position

---

[3] United States v. Sandlin, No. 21-cr-88 (DLF), 2021 WL 5865006, at *5–9 (D.D.C. Dec. 10, 2021) (Friedrich, J.); United States v. Caldwell, Case No. 21-cr-28 (APM), 2021 WL 6062718, at *11–19 (D.D.C. Dec. 20, 2021) (Mehta, J.); United States v. Mostofsky, Crim A. No. 21-138 (JEB), 2021 WL 6049891, at *11 (D.D.C. Dec. 21, 2021) (Boasberg, J.); United States v. Montgomery, Crim A. No. 21-46 (RDM), 2021 WL 6134591, at *10–18 (D.D.C. Dec. 28, 2021) (Moss, J.); United States v. Nordean, Crim. A. No. 21-175 (TJK), 2021 WL 6134595, at *6–8 (D.D.C. Dec. 28, 2021) (Kelly, J.); McHugh I, 2022 WL 296304, at *4 n.5; United States v. Grider, Crim. A. No. 21-0022 (CKK), 2022 WL 392307, at *5–6 (D.D.C. Feb. 9, 2022) (Kollar-Kotelly, J.).  In addition, Chief Judge Howell and Judges Leon and Cooper have upheld § 1512(c)(2) charges arising from the events of January 6th, but those opinions did not address this particular interpretive question.  See Tr. of Mot. Hr'g, Jan. 21, 2022, at 31:25–50:19, United States v. Decarlo, Crim. A. No. 21-73 (BAH), ECF No. 66 (Howell, C.J.); Min. Order, Feb. 24, 2022, United States v. Costianes, Case No. 21-cr-180 (RJL) (Leon, J.); Op. & Order, Feb. 25, 2022, United States v. Robertson, Case No. 21-cr-34 (CRC) (Cooper, J.), ECF No. 63, at 4–16.

[4] See United States v. Puma, Crim. A. No. 21-0454 (PLF), 2022 WL 823079, at *12 & n.4 (D.D.C. Mar. 19, 2022) (Friedman, J.); United States v. Andries, Crim. A. No. 21-93 (RC), 2022 WL 768684, at *9 & n.7 (D.D.C. Mar. 14, 2022) (Contreras, J.)

[5] See United States v. Petruk, 781 F.3d 438, 446–47 (8th Cir. 2015); United States v. Burge, 711 F.3d 803, 809–10 (7th Cir. 2013); United States v. De Bruhl-Daniels, 491 F. Supp. 3d 237, 250–52 (S.D. Tex. 2020); United States v. Ying Lin, 270 F. Supp. 3d 631, 636 (E.D.N.Y. 2017); United States v. Ring, 628 F. Supp. 2d 195, 224–25 (D.D.C. 2009) (Huvelle, J.); United States v. Kumar, No. 04-CR-846 (ILG), 2006 WL 6589865, at *2–4 (E.D.N.Y. Feb. 21, 2006).

[6] See, e.g., United States v. Martinez, 862 F.3d 223, 238 (2d Cir. 2017), vacated on other grounds, 139 S. Ct. 2772 (2019); United States v. Jefferson, 751 F.3d 314, 321 (5th Cir. 2014); United States v. Ahrensfield, 698 F.3d 1310, 1324–26 (10th Cir. 2012); United States v. Townsend, 630 F.3d 1003, 1014–15 (11th Cir. 2011); United States v. Phillips, 583 F.3d 1261, 1265 (10th Cir. 2009); United States v. Carson, 560 F.3d 566, 584 (6th Cir. 2009); United States v. Mintmire, 507 F.3d 1273, 1290 (11th Cir. 2007); United States v. Lucas, 499 F.3d 769, 780–81 (8th Cir. 2007).

in United States v. Bozell, Case No. 21-CR-216 (JDB), 2022 WL 474144 at *5 (D.D.C. Feb. 16, 2022), but kept its reasoning brief in light of the then-unanimous conclusions of judges in this District.  Now that McHugh has squarely presented this question and the judges of this District are no longer unanimous, the Court deems it appropriate to thoroughly explain its view.  For the reasons set forth below, the Court again holds that 18 U.S.C. § 1512(c)(2) is not limited to obstructive acts taken with respect to a document or other object and instead applies broadly to all manner of obstructive conduct.[7]

## I.    The Broad Interpretation of § 1512(c) Is the Most Natural Reading of the Text

As always, the Court begins with the text.  The Court agrees with Judge Nichols that the meaning of "otherwise" is central to the meaning of § 1512(c)(2).  As he notes, "[r]eading § 1512(c)(2) alone is linguistically awkward," Miller, 2022 WL 823070, at *6, and the word "otherwise" signals some sort of semantic link between paragraphs (c)(1) and (c)(2), see, e.g., Begay v. United States, 553 U.S. 137, 151 (2007) (Scalia, J., concurring in the judgment) ("[B]y using the word 'otherwise' the writer draws a substantive connection between two sets . . . .").  The first step in interpreting § 1512(c)(2), then, is determining what "otherwise" means.

"Otherwise" generally means "in a different way."  See Otherwise, Oxford English Dictionary (3d ed. 2004) (defining the word as "[i]n another way or ways; in a different manner; by other means; in other words; differently"); Miller, 2022 WL 823070, at *6 (listing "three different definitions" for "otherwise": "in a different way or manner: differently"; "in different circumstances: under other conditions"; and "in other respects." (quoting Otherwise, Webster's Third New Int'l Dictionary of the English Language Unabridged (2002))).  Substituting this

---

[7] Because the Court does not adopt Judge Nichols's reasoning in Miller and instead concludes that § 1512 does not "raise serious ambiguity concerns," Def.'s Reply at 2 (citing Miller, 2022 WL 823070, at *15), it need not— and does not—address whether Count Five properly states a claim even under Miller's reading, see Gov't Opp'n at 22–25; Def.'s Reply at 1–4, or McHugh's conditional request for a bill of particulars, Def.'s Reply at 4.

definition—or indeed any of the word's various dictionary definitions—into paragraph (c)(2) produces a broad prohibition on obstructing an official proceeding in any way other than the method proscribed by paragraph (c)(1). To paraphrase: "Whoever corruptly (1) interferes with a document or object with intent to obstruct a proceeding; or (2) <u>in a different way</u> obstructs, influences, or impedes any official proceeding, shall be fined or imprisoned." That is, the government's reading of § 1512(c)(2) is the provision's most natural interpretation. <u>See, e.g.</u>, <u>Puma</u>, 2022 WL 823079, at *12 ("The word 'otherwise' carries a clear meaning . . . . that a defendant can violate Section 1512(c)(2) through 'obstruction by means <u>other than</u> document destruction.'" (quoting <u>Mostofsky</u>, 2021 WL 6049891, at *11)); <u>Sandlin</u>, 2021 WL 5865006, at *5 (same); <u>Petruk</u>, 781 F.3d at 446–47 ("Section 1512(c)(2) gives defendants fair warning in plain language that a crime [under § 1512(c)(2)] will occur in a different ('otherwise') manner compared to § 1512(c)(1) . . . .").

Judge Nichols, by contrast, adopts a different meaning for "otherwise": "in a different, but fundamentally similar, way." Under this interpretation, paragraph (c)(2) prohibits only obstructive acts of a type similar to those proscribed by paragraph (c)(1): "action[s] with respect to a document, record, or other object." <u>Miller</u>, 2022 WL 823070, at *15. This reading of "otherwise" is not entirely without logic—there are indeed situations when courts can and should interpret words like "otherwise" as limiting what follows to the same category as the preceding terms. This general interpretive principle is known as "<u>ejusdem generis</u>." <u>Cf.</u> <u>Grider</u>, 2022 WL 392307, at *5 (calling this argument in favor of narrowly interpreting § 1512(c)(2) "a flavor of the canon of statutory instruction e[jus]dem generis").

But <u>ejusdem generis</u> applies only to enumerations that end in a generic (and often broad) final term. <u>See, e.g.</u>, <u>Overdevest Nurseries, L.P. v. Walsh</u>, 2 F.4th 977, 983 (D.C. Cir. 2021)

("[Ejusdem generis] appl[ies] when the term in question is directly preceded by a list of terms.");

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199 (2012)

("Scalia & Garner, Reading Law") (defining ejusdem generis as the principle that, "[w]here

general words follow an enumeration of two or more things, they apply only to persons or things

of the same general kind or class specifically mentioned"). For example, "dogs, cats, horses, cattle,

and other animals," Scalia & Garner, Reading Law, at 199, or "trays, glasses, dishes, or other

tableware," id. at 200 (citing Treasure Island Catering Co. v. State Bd. of Equalization, 120 P.2d

1, 5 (Cal. 1941)).

Section 1512(c) does not match this description. Rather than a continuous list with a

general term at the end, § 1512(c) contains two separately numbered paragraphs, with a semicolon

and a line break separating the "otherwise" clause in paragraph (c)(2) from the preceding terms in

paragraph (c)(1). Furthermore, paragraph (c)(2) is grammatically distinct from paragraph (c)(1).

Although the two provisions share a subject and adverb ("whoever corruptly"), paragraph (c)(2)

contains an independent list of verbs that take a different object ("any official proceeding") from

the verbs in paragraph (c)(1) (which take the object "a document, record, or other object"). See,

e.g., Montgomery, 2021 WL 6134591, at *12 ("[W]hile the official proceeding is the indirect

object of the intent requirement in Section 1512(c)(1), it is the direct object of the conduct at issue

in Section 1512(c)(2)."). In short, rather than "A, B, C, or otherwise D," section 1512(c) follows

the form "(1) A, B, C, or D; or (2) otherwise E, F, or G." The ejusdem generis principle underlying

Judge Nichols's interpretation of "otherwise" is thus irrelevant here. See Overdevest Nurseries, 2

F.4th at 983 (holding that ejusdem generis was "irrelevant" because the term at issue "[wa]s not

even in the same provision" as the narrower term supposedly limiting its scope); see also

Montgomery, 2021 WL 6134591, at *14 ("[B]ecause the two prongs of Section 1512(c) are not

parallel, the <u>noscitur</u> and <u>ejusdem</u> canons have little bearing on the interpretative question before the Court.").

Judge Nichols also relies heavily on the Supreme Court's decision in <u>Begay v. United States</u>, 553 U.S. 137 (2007), to support his reading of "otherwise." In <u>Begay</u>, the Supreme Court confronted 18 U.S.C. § 924(e)(2)(B)(ii), which, in relevant part, defines the phrase "violent felony" as a felony that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." The Court in <u>Begay</u> concluded that this definition did not include <u>every</u> felony that "present[ed] a serious potential risk of physical injury to another," instead holding that § 924(e)(2)(B)(ii)'s "otherwise" clause encompassed only crimes similar in kind to those in the preceding list. <u>Begay</u>, 553 U.S. at 142.

But <u>Begay</u> cannot bear the weight Judge Nichols assigns to it—the similarities between § 924(e)(2)(B)(ii) and § 1512(c) end with the use of the word "otherwise." Whereas § 1512(c)'s "otherwise" clause is a separately numbered paragraph set off by a semicolon and line break, § 924(e)(2)(B)(ii)'s "otherwise" clause is part of the same statutory provision, separated from the preceding text by only a comma. And whereas § 1512(c) is divided into two grammatically distinct provisions, § 924(e)(2)(b)(ii) is a continuous, parallel list of adjectival terms. <u>See</u> <u>Caldwell</u>, 2021 WL 6062718, at *14 ("[U]nlike [§ 924(e)(2)(B)(ii)], the term 'otherwise' in section 1512(c)(2) does not follow a list of examples."); <u>see also</u> <u>Montgomery</u>, 2021 WL 6134591, at *12 (noting additional differences between the statutes). Finally, the <u>reasoning</u> of <u>Begay</u> does not turn in any

real way on the meaning of "otherwise."[8]  See, e.g., Montgomery, 2021 WL 6134591, at *11 ("Begay's discussion of the word 'otherwise' is remarkably agnostic . . . ."). All the Court really says in Begay is that "otherwise" can sometimes carry a limiting force.[9]  See Begay, 553 U.S. at 144 ("[T]he word 'otherwise' can (we do not say must) refer to a crime that is similar to the listed examples in some respects but different in others . . . ." (internal citation omitted)); see also Caldwell, 2021 WL 6062718, at *14 ("[T]he [Begay] Court said that 'otherwise' can have that effect, not that it must." (cleaned up)).  This Court readily concedes that "otherwise" sometimes means what Judge Nichols suggests—but it does not have that meaning in § 1512(c)(2).  So while Judge Nichols is technically correct that his interpretation of § 1512(c)(2) is "consistent with Begay," Miller, 2022 WL 823070, at *9, that consistency counts for very little given Begay's inapposite facts and equivocal reasoning.

Instead, § 1512(c)'s structure suggests that paragraphs (c)(1) and (c)(2) are semantically independent.  In Loughrin v. United States, 573 U.S. 351 (2014), an eight-Justice majority remarked on the "notable textual differences" between a statute consisting of "two phrases strung together in a single, unbroken sentence" (like § 924(e)(2)(B)(ii)) and one containing "two clauses [with] separate numbers, line breaks before, between, and after them, and equivalent indentation" (like § 1512(c)).  573 U.S. at 359.  The latter structure, the Court noted, "plac[ed] the clauses

---

[8] By contrast, Justice Scalia's concurrence focuses intently on the semantics of the word "otherwise," concluding that, "by using the word 'otherwise' the writer draws a substantive connection between two sets only on one specific dimension—i.e., whatever follows 'otherwise.'"  Begay, 553 U.S. at 151 (Scalia, J., concurring in the judgment).  Applying that description—which this Court finds persuasive—to § 1512(c)(2) means that the only connection between paragraphs (c)(1) and (c)(2) is that both provisions criminalize acts which "obstruct[], influence[], or impede[] any official proceeding."  In other words, paragraph (c)(1) imposes no additional limitations on the kinds of obstruction covered by paragraph (c)(2).  See Montgomery, 2021 WL 6134591, at *11–12 (advancing this interpretation of "otherwise"); Grider, 2022 WL 392307, at *5 (same).

[9] Moreover, the majority frames its discussion as a concession that the use of "otherwise" supports a broader interpretation of the clause: "Of course, the statute places the word 'otherwise,' just after the examples . . . . But we cannot agree with the Government that the word 'otherwise' is sufficient to demonstrate that the examples do not limit the scope of the clause."  Begay, 553 U.S. at 144.  If anything, then, Begay suggests that here the government's interpretation of "otherwise" is the word's more natural reading.

visually on an equal footing and indicat[ed] that they have separate meanings." Id. This observation is instructive with respect to § 1512(c): although "otherwise" does create some linkage between paragraphs (c)(1) and (c)(2) by indicating that both prohibit conduct that "obstructs, influences, or impedes" an official proceeding, Loughrin indicates that § 1512(c)(2) is otherwise untethered to § 1512(c)(1).[10]

An examination of statutes that, like § 1512(c) and unlike § 924(e)(2)(B), use "otherwise" to introduce a new subsection further bolsters this reading.[11] Courts have interpreted these instances of "otherwise" as confirming rather than restricting the breadth of their respective provisions. For example, the Travel Act applies to an individual who

> travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to (1) distribute the proceeds of any unlawful activity; or (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

18 U.S.C. § 1952(a) (emphasis added). One court interpreting this provision has noted that "[t]he use of 'otherwise' in § (a)(3) indicates that in Congress's view, intending to commit a crime of violence under § (a)(2) is simply one way in which an offender can intend to promote or facilitate unlawful activity." United States v. O'Hara, 143 F. Supp. 2d 1039, 1042 (E.D. Wis. 2001). Or take 28 U.S.C. § 2466(a):

> A judicial officer may disallow a person from using the resources of the courts of the United States . . . upon a finding that such person (1) after notice or knowledge

---

[10] In Miller, Judge Nichols criticizes the government's reliance on Loughrin by pointing out various differences between 18 U.S.C. § 1344 (the statute at issue in Loughrin) and § 1512, including that § 1344 does not use the word "otherwise." See Miller, 2022 WL 823070, at *10–11. But Loughrin need not be directly factually apposite in order for the Supreme Court's general statement regarding separately numbered provisions to be helpful in determining the extent to which paragraphs (c)(1) and (c)(2) are semantically intertwined. Indeed, although neither case is directly on-point, the Court finds Loughrin, even with its differences, to be more instructive in this case than Begay.

[11] This structure is far from uncommon in the federal criminal code. See, e.g., 18 U.S.C. § 249(a)(2)(B)(iv); id. § 983(a)(1)(D); id. § 1836(b)(3)(A)(i); id. § 2332g (a)(1)(A); id. § 2705(a)(2).

of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution (A) purposely leaves the jurisdiction of the United States; (B) declines to enter or reenter the United States to submit to its jurisdiction; or (C) <u>otherwise</u> evades the jurisdiction of the court in which a criminal case is pending against the person . . . .

28 U.S.C. § 2466(a) (emphasis added). The Second Circuit has affirmatively stated that "the use of the introductory word 'otherwise' indicates that the evasion referred to in subpart (C) reaches beyond these specific examples to myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court." <u>Collazos v. United States</u>, 368 F.3d 190, 200 (2d Cir. 2004).

Accordingly, the Court disagrees with Judge Nichols that the broad interpretation of § 1512(c)(2) effectively reads "otherwise" out of the provision. <u>See</u> <u>Miller</u>, 2022 WL 823070, at *9. Just as with 28 U.S.C. § 2466(a), section 1512(c)(2)'s use of "otherwise" signals that it applies to the "myriad means that human ingenuity might devise to permit a person to" obstruct an official proceeding. <u>Collazos</u>, 368 F.3d at 200. Put another way, giving "otherwise" its ordinary meaning—"in a different way"—makes paragraph (c)(2) a catch-all provision that prohibits a set of actions inclusive of, but broader than, the acts proscribed by paragraph (c)(1). For similar reasons, the Court is not troubled by Judge Nichols's observation that, if § 1512(c)(2) is construed broadly, "the principal (indeed, only) criminal offense in subsection (c) is listed in its second subsection." <u>Miller</u>, 2022 WL 823070, at *9. Far from "turn[ing] expectation on its head," <u>id.</u>, that is simply how catch-alls work. Indeed, the exact same critique could be levelled at any of the above statutes that end with catch-all provisions introduced by "otherwise." This aspect of § 1512(c) is thus perfectly normal for this common statutory structure.

As a textual matter, then, the Court concludes that the government's broad interpretation of § 1512(c)(2) is the better one. Applying the ordinary meaning of "otherwise," as confirmed by

dictionary definitions and judicial interpretations of analogous statutes, § 1512(c)(2) prohibits acts which obstruct an official proceeding "in a different way" from those obstructive acts covered by paragraph (c)(1). Contrary to Judge Nichols's contention in Miller, such an interpretation neither reads "otherwise" out of the statute nor creates an unintuitive or uncommon statutory structure. And although "otherwise" may sometimes carry a limitation of the type Judge Nichols suggests, it does not do so here, as § 1512(c)'s structure renders the ejusdem generis principle and the Supreme Court's Begay decision inapposite.

## II. The Statute's Context and Purpose Also Support a Broader Reading

"[W]hen the meaning of [a] statute's terms is plain, [the court's] job is at an end," Bostock v. Clayton Cnty., 140 S. Ct. 1731, 1749 (2020), and in this Court's view, § 1512(c)(2) has a clear and sensible meaning according to the ordinary meaning of its terms. Yet McHugh's proffered reading, as noted above, is not entirely without support, and Judge Nichols relies heavily on § 1512(c)(2)'s context and purpose in concluding that the narrow interpretation of the statute "is the better one." Miller, 2022 WL 823070, at *15. Thus, it is appropriate to assess these same considerations and determine whether they displace the statute's ordinary meaning.

At the outset, it is worth introducing the circumstances of § 1512(c)(2)'s enactment. Subsection (c) was added to 18 U.S.C. § 1512 as part of the Sarbanes-Oxley Act of 2002, Pub L. No. 107-204, § 1102, 116 Stat. 745, 807, a law "prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents," Yates v. United States, 574 U.S. 528, 536–37 (2015). Among other things, the scandal and resulting prosecution of Arthur Andersen exposed a loophole in then-existing federal obstruction statutes. On the one hand, 18 U.S.C. §§ 1503(a) and 1505 broadly prohibited obstruction of various types of proceedings, but

13

only if those proceedings were already pending.[12]  See 18 U.S.C. § 1503(a) (judicial proceedings); id. § 1505 (agency proceedings and congressional investigations).  On the other hand, § 1512 applied to all official proceedings, pending or not, but prohibited only indirect obstruction: harming, threatening, or harassing another person to induce them to obstruct the proceeding.  See 18 U.S.C. § 1512(a)–(c), (e) (effective Oct. 11, 1996 to July 29, 2002).  Before 2002, then, direct obstruction of an official proceeding that was not yet pending was not a federal crime, forcing prosecutors in the Arthur Andersen case to "proceed under the legal fiction that the defendants are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves."  S. Rep. No. 107-146, at 7 (2002).

The addition of § 1512(c) was one of several amendments to Title 18, Chapter 73 designed to close this loophole.  See, e.g., Caldwell, 2021 WL 6062718, at *16.  The provision's sponsor was quite clear on this point:

> Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered. . . .  [T]his [proposed] section would allow the Government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena.

148 Cong. Rec. S6545 (daily ed., July 10, 2002) (statement of Sen. Lott); accord id. at S6550 (statement of Sen. Hatch) ("[Section 1512] currently . . . . does not prohibit an act of destruction committed by a defendant acting alone.  While other existing obstruction of justice statutes cover acts of destruction that are committed by an individual acting alone, such statutes have been interpreted as applying only where a proceeding is pending . . . .  This amendment closes this

---

[12] Section 1505 includes this limitation to pending proceedings in its text, see 18 U.S.C. § 1505, while courts have uniformly construed § 1503(a)'s catch-all provision to include an identical limitation, see, e.g., United States v. Brown, 973 F.3d 667, 694 (7th Cir. 2020) ("To sustain a conviction under section 1503's catchall provision, the government must prove [that] a judicial proceeding was pending . . . ." (internal quotation marks and citation omitted)); United States v. Machado-Erazo, 986 F. Supp. 2d 39, 51 (D.D.C. 2013) (same).

loophole . . . .").  This general legislative intention is not in dispute.  See Miller, 2022 WL 823070, at *13–14; Montgomery, 2021 WL 6134591, at *15–16.

The question here is how broad Congress meant its loophole-closing amendment to be: did Congress seek to close the direct obstruction loophole with respect to all obstructive conduct or only with respect to conduct relating to documents or physical evidence?  Relying on inferences drawn from § 1512's other provisions and on subsection (c)'s legislative history, Judge Nichols concludes that the latter, narrower intention is more likely.  See Miller, 2022 WL 823070, at *11–14.  This Court is not persuaded.  Nothing about § 1512(c)(2)'s context or purpose justifies departing from the provision's ordinary meaning; on the contrary, the context, structure, and legislative history of § 1512 bolster the Court's conclusion that § 1512(c)(2) is a broad prohibition on all forms of corrupt obstruction.

### A.  Overlap Between § 1512(c)(2) and § 1512's Other Provisions

Judge Nichols's principal argument that Congress did not intend for paragraph (c)(2) to apply broadly is that, if it did, "the majority of § 1512 would be unnecessary" and paragraph (c)(2) would be "a duplicate to nearly all of § 1512." Miller, 2022 WL 823070, at *12.  More specifically, he notes that, if paragraph (c)(2) prohibits all forms of direct obstruction, then "conduct made unlawful by at least eleven subsections [of § 1512] . . . would also run afoul of § 1512(c)(2)," id.— "[s]uch substantial overlap within the same section suggests that Congress did not mean § 1512(c)(2) to have so broad a scope," id.  The Court disagrees with this conclusion.

Although Judge Nichols is correct that many forms of indirect obstruction proscribed elsewhere in § 1512 also violate paragraph (c)(2), the reason is simple: the category of "direct obstruction" criminalized by paragraph (c)(2) includes the forms of indirect obstruction prohibited by the rest of § 1512.  Like squares and rectangles, every example of indirect obstruction—say,

threatening a witness to keep them from testifying at a hearing—is also an example of (or an attempt at) direct obstruction, since the act of threatening the witness itself obstructs, influences, or impedes the hearing.  By adding a new prohibition on direct obstruction to § 1512, Congress did not <u>duplicate</u> pre-existing provisions, <u>contra</u> <u>Miller</u>, 2022 WL 823070, at *12, but instead <u>expanded</u> the statute to include additional forms of obstructive conduct, necessarily creating overlap with the section's other, narrower prohibitions.[13]  Even Judge Nichols acknowledges that this direct-indirect distinction "might eliminate some superfluity" under the broad reading.  <u>Miller</u>, 2022 WL 823070, at *12 n.10.[14]

Indeed, precisely because indirect obstruction is only one form of direct obstruction, <u>any</u> attempt to close the direct obstruction loophole while working within § 1512's pre-existing structure would have created substantial overlap.  Even under Judge Nichols's narrower interpretation, conduct proscribed by seven other provisions of § 1512—subparagraphs (a)(1)(B), (a)(2)(B)(i)–(iii), and (b)(2)(A)–(C)—would also violate § 1512(c).  <u>Cf.</u> <u>United States v. Ali</u>, 718 F.3d 929, 938 (D.C. Cir. 2013) ("[T]he canon against surplusage merely favors that interpretation

---

[13] While true duplication in a statute can be a serious problem, <u>see</u> Scalia & Garner, <u>Reading Law</u>, at 174 ("No[] [word or provision] should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."), overlap of this type, as explained below, is much more common (and less concerning).

[14] Judge Nichols nonetheless comments that "placing this kind of catchall in a subsection of a subsection in the middle-back of § 1512 is still unintuitive."  <u>Miller</u>, 2022 WL 823070, at *12 n.10; <u>accord</u> <u>id.</u> at *12 (commenting that a broadly-construed § 1512(c)(2) would "come in the oddest of places: in a subsection of a subsection nestled in the middle of the statute.").  But contrary to this implicit suggestion, placing subsection (c) at the end of § 1512 would have made no sense.  Section 1512 has two parts: subsections creating criminal offenses come first, followed by subsections making various, generally-applicable clarifications.  It would have been quite odd for Congress to locate a new provision creating a criminal offense in the <u>second</u> part, among the miscellaneous provisions, instead of alongside other subsections—(a), (b), and (d)—that also define crimes.

But more generally, whether a prohibition is located in the front, middle, back, or even "middle-back" of a particular statute is simply not that helpful in determining what Congress intended for it to mean.  Although the observation that "Congress does not hide elephants in mouseholes" is a helpful heuristic when one reading of a statute would "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions," <u>Whitman v. Am. Trucking Ass'ns</u>, 531 U.S. 457, 468 (2001); <u>see</u> <u>Miller</u>, 2022 WL 823070, at *12 (relying on this principle), that is not the situation here, and the "mouseholes" canon surely does not instruct courts to second-guess the plain meaning of a statute just because the judge can imagine other ways it could have been organized, <u>see, e.g.</u>, <u>Bostock</u>, 140 S. Ct. at 1753 (commenting that the "mouseholes" principle "has no relevance" where the statute in question "is written in starkly broad terms").

which <u>avoids</u> surplusage, not the construction substituting one instance of superfluous language for another." (internal quotation marks and citation omitted)).  Only if Congress had repealed § 1512's pre-existing prohibitions on indirect obstruction and rewritten the statute to create a single, blanket obstruction offense could it have avoided the overlap of which Judge Nichols complains.  And not only was Congress under no obligation to take that step, but its choice not to substitute one expansive crime for several narrower but overlapping offenses was, at the very least, reasonable.

More generally, overlap of this type is common in the criminal law.  <u>See</u> <u>Loughrin</u>, 573 U.S. at 358 n.4 (noting that "overlap between . . . two clauses," even "substantial" overlap, "is not uncommon in criminal statutes"); <u>Hubbard v. United States</u>, 514 U.S. 695, 714 n.14 (1995) (opinion of Stevens, J.) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct.").  Indeed, Chapter 73 itself contains several statutes that exhibit precisely this kind of overlap,[15] <u>see</u> <u>Montgomery</u>, 2021 WL 6134591, at *13 ("Chapter 73 inescapably contains numerous overlapping provisions, regardless of how broadly Section 1512(c)(2) is construed."), as do the other subsections of § 1512 itself.[16]  In crafting federal obstruction laws, then, Congress clearly has not placed a premium on minimizing overlap, even

---

[15] A great number of violations of 18 U.S.C. § 1519's prohibition on destroying, altering, or falsifying records "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States" will also violate 18 U.S.C. § 1505's prohibition on "corruptly . . . influenc[ing], obstruct[ing], or imped[ing]" pending agency proceedings.  Moreover, because of the relationship between indirect and direct obstruction described above, every violation of § 1512(a), (b), and (d) (except for those with respect to not-yet-pending proceedings) would also violate either § 1505 or § 1503(a)'s prohibitions on direct obstruction of judicial, agency, or congressional proceedings.

[16] For example, nearly every violation of § 1512(a)(1) ("kill[ing] or attempt[ing] to kill another person") will also violate § 1512(a)(2) ("us[ing] physical force"), and paragraph (a)(2)'s prohibition on "us[ing] the threat of physical force against any person" is duplicative of subsection (b)'s prohibition on "knowingly . . . threaten[ing] . . . another person."

17

between prohibitions located in the same section.[17]  Moreover, just as the categories of "squares" and "rectangles" each remain useful despite overlapping, § 1512(c)(2)'s expansion of criminal liability does not deprive § 1512's other provisions of their value.  See Caldwell, 2021 WL 6062718, at *17 (explaining how the other subsections of § 1512 "continue to have vitality" and are not "render[ed] . . . obsolete" by a broad reading of paragraph (c)(2)).

Superfluity and overlap are not evils in and of themselves, to be avoided for their own sakes when interpreting a statute.  Rather, the presence of superfluity in a statutory scheme is instructive only to the extent that it supports an inference about the legislature's likely intent.  See, e.g., Scalia & Garner, Reading Law, at 176 ("[L]ike all other canons, [the canon against superfluity] must be applied with judgment and discretion, and with careful regard to context.  It cannot always be dispositive because (as with most canons) the underlying proposition is not invariably true.").  And in this case, where § 1512(c)(2) creates only explicable and indeed inevitable overlap rather than outright redundancy, the purported superfluity in § 1512 simply does not justify displacing the provision's ordinary meaning.

**B.  Origins of § 1512(c)'s Language**

Next, Judge Nichols points to the source of § 1512(c)'s language as an indication of its intended narrow scope.  Postulating that Congress borrowed § 1512(c)(1)'s text from (the essentially identical) sub-paragraph (b)(2)(B), Miller, 2022 WL 823070, at *13, Judge Nichols

---

[17] Judge Nichols argues that Congress's addition of § 1512(a)(2), which prohibits "us[ing] physical force or the threat of physical force against any person" with obstructive intent, four months after the enactment of § 1512(c) supports a narrower interpretation of paragraph (c)(2).  If § 1512(c)(2) covered all forms of obstruction (thus overlapping with many prohibitions on indirect obstruction), Judge Nichols asks, why would the same Congress have added a new indirect obstruction prohibition only a few months later?  Miller, 2022 WL 823070, at *13.  But although § 1512(a)(2) was enacted in November 2002, it was written and first approved nearly a year earlier.  See 147 Cong. Rec. S14010, 14025–26 (daily ed. Dec. 20, 2001) (introduction of amendment containing § 1512(a)(2)); id. at S14075 (adoption of amendment and passage of bill); H.R. 2215, 107th Cong. § 3001(a) (as enrolled, Jan. 23, 2002) (text of bill as passed by the Senate including § 1512(a)(2)).  Section 1512(a)(2)'s history thus answers Judge Nichols's question and somewhat undermines the inference he draws.

draws the "fair inference" that "Congress intended subsection (c) to have a narrow, limited focus—just like subsection (b)(2)(B)." Id.

This argument is unpersuasive. The Court does not dispute the factual premise that § 1512(c)(1) was borrowed from § 1512(b)(2)(B), but the inference Judge Nichols draws is not warranted. The origin of paragraph (c)(1)'s language is relevant to the interpretation of paragraph (c)(2) only if one engages in circular reasoning by assuming the ultimate conclusion: that paragraphs (c)(1) and (c)(2) must be similar in scope. Particularly in light of Congress's choice to give paragraph (c)(2) its own separately denominated provision, the Court sees no basis to conclude that paragraph (c)(2) must be narrow just because paragraph (c)(1) was adapted from a narrow prohibition.

The Court agrees, however, that the borrowing of pre-existing statutory language can be a clue in determining legislative intent. Applying that tool to paragraph (c)(2) on its own, however, bolsters rather than undermines the broad interpretation of the provision: § 1512(c)(2) appears to have been adapted from 18 U.S.C. §§ 1503 and 1505, broad obstruction statutes that apply to all forms of obstruction. The source of paragraph (c)(2)'s language thus suggests that Congress intended the provision to apply just as broadly.

Section 1512(c)(2)'s actus reus verbs—"obstruct," "influence," "impede"—form the actus reus of four other federal offenses, all criminalizing obstruction: 18 U.S.C. §§ 1033(d), 1503(a), 1505, and 1516(a). Barring an extraordinary coincidence in which § 1512(c)(2)'s drafters independently hit upon the same three verbs, then, it is likely that § 1512(c)(2) was adapted from at least one of these statutes. And of those four, sections 1503 and 1505 are far and away the oldest—indeed, they are two of the oldest and most frequently-used federal obstruction statutes,

dating back to the 1948 enactment of Chapter 73.[18]  Furthermore, as noted above, § 1512(c) was enacted in part to close a loophole left open by sections 1503 and 1505.  See 148 Cong. Rec. S6545 (daily ed., July 10, 2002) (statement of Sen. Lott).  It is thus a matter of public record that § 1512(c)(2)'s drafters had §§ 1503 and 1505 in mind.

The Court concludes, then, that § 1512(c)(2)'s language was likely adapted from the similar language of 18 U.S.C. §§ 1503(a) and 1505.  And those two statutes are expansive prohibitions on obstruction: in relevant part, § 1503(a) prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing] . . . the due administration of justice," while § 1505 bars "corruptly . . . influenc[ing], obstruct[ing], or imped[ing] . . . the due and proper administration of the law under which any [pending agency proceeding or congressional investigation] is being had."  Neither statute includes any limitation on the nature of the obstructive act other than that it must be committed "corruptly," i.e., with specific obstructive intent.[19]  Be it destroying documents, threatening a witness, or storming the building where the proceeding is occurring, so long as the act is performed corruptly and obstructs a pending proceeding, sections 1503 and 1505 criminalize it.  By Judge Nichols's own reasoning then, Congress's apparent borrowing of language from these broad prohibitions gives rise to "a fair inference" that "Congress intended [paragraph (c)(2)] to have a [broad scope]—just like [sections 1503(a) and 1505]."  See Miller, 2022 WL 823070, at *13.

---

[18] By contrast, § 1033(d) was first enacted in 1994 and is copied nearly verbatim from § 1505, see Violent Crime Control and Law Enforcement Act of 1994, Pub L. 103-322, § 320603(a), 108 Stat. 1796, 2115, and § 1516(a) dates from 1988, see Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7078(a), 102 Stat. 4181, 4406.

[19] Courts have uniformly construed "corruptly" in § 1503(a) as a mens rea term requiring specific intent. See, e.g., United States v. Sampson, 898 F.3d 287, 299 (2d Cir. 2018) ("The mens rea [in § 1503(a)'s omnibus clause] is acting 'corruptly'—that is, with 'a specific intent to obstruct a federal judicial or grand jury proceeding.'" (citation omitted)); accord Machado-Erazo, 986 F. Supp. 2d at 51.  And Congress itself clarified that "corruptly" in § 1505 "means acting with an improper purpose" and does not require any particular method of obstruction.  18 U.S.C. § 1515(b).  Although both sections do list certain forms of obstruction (doing so "by threats or force, or by any threatening letter or communication"), id. §§ 1503(a), 1505, these are not prerequisites for violating these statutes.

### C.  The Implausibility of the Narrow Interpretation of § 1512(c)(2)

Conversely, while the structure and context of § 1512 is not only consistent with but supportive of construing paragraph (c)(2) to prohibit all forms of obstruction, the narrower reading posited by Judge Nichols is not very plausible as a matter of legislative intent.  In Judge Nichols's view, paragraph (c)(2) serves as a limited residual clause for paragraph (c)(1), covering only some obstructive acts related to documents or objects and "operat[ing] to ensure that by delineating only certain specific unlawful acts in subsection (c)(1) . . . [Congress] was not underinclusive."  Miller, 2022 WL 823070, at *10.  But if so, then Congress did a particularly poor job of drafting paragraph (c)(2)—if the aim was to create a narrow prohibition on only certain forms of obstruction, Congress effectuated that intent in a way that is singularly susceptible to misinterpretation, as evidenced by the overwhelming majority of judges who have construed § 1512(c)(2) broadly.  Because its verbs naturally sweep in all obstructive conduct, see, e.g., Sandlin, 2021 WL 5865006, at *5 ("These terms are expansive and seemingly encompass all sorts of actions that affect or interfere with official proceedings . . . ."); Nordean, 2021 WL 6134595, at *6 ("This language is plainly expansive in scope and does not suggest a limitation along the lines Defendants propose." (internal quotation marks and citation omitted)), paragraph (c)(2)'s only source of limitation is the word "otherwise," which even Judge Nichols acknowledges frequently does not carry limiting force.  In other words, paragraph (c)(2) only means what Congress supposedly intended if one construes an ambiguous adverb in a certain way.

Moreover, this propensity for confusion was eminently avoidable: "it would have been easy for Congress to craft language to achieve the goal that Defendants now hypothesize." Montgomery, 2021 WL 6134591, at *12.  For instance, as Judge Moss has suggested, Congress "could have substituted Section 1512(c)(2) with the following: 'engages in conduct that otherwise

impairs the integrity or availability of evidence or testimony for use in an official proceeding.'" Id. In light of the many ways it could have more clearly enacted a narrow residual prohibition of the type Judge Nichols suggests, to conclude that this was Congress's goal is essentially to conclude that Congress deliberately chose to be unclear. See id. ("The fact that Congress, instead, enacted language that more generally . . . criminalized efforts corruptly to obstruct official proceedings speaks volumes.").

Or Congress could have borrowed more apt language from another obstruction statute, as it did in § 1512(c)(1). Section 1519, also enacted as part of Sarbanes-Oxley, see Pub. L. No. 107-204, § 802(a), 116 Stat. 745, 800, contains a thorough prohibition on evidence-based obstruction which would have largely addressed any concern about paragraph (c)(1)'s underinclusivity, see Miller, 2022 WL 823070, at *10 (noting that § 1519 illustrates "additional ways in which an individual can corruptly act on a 'record, document, or tangible object' that are not covered by subsection (c)(1) but would be covered, on this reading, by subsection (c)(2)"). Likewise, 18 U.S.C. § 1505 contains a similarly detailed prohibition on various forms of interference with "documentary material." See 18 U.S.C. § 1505 ("Whoever . . . willfully withholds, misrepresents, removes from any place, conceals, covers up, destroys, mutilates, alters, or by other means falsifies any documentary material . . . [s]hall be fined under this title . . . ."). But instead of § 1505's narrow, document-centric first provision, § 1512(c)(2)'s drafters looked to § 1505's much broader second prohibition on all methods of "corruptly . . . influenc[ing], obstruct[ing], or imped[ing]" a proceeding. It would be highly incongruous for Congress to have adapted this broader offense into a prohibition on only some forms of evidence-based obstruction.

### D. Legislative History

Finally, § 1512(c)'s legislative history.  Judge Nichols contends that floor statements from Senators advocating for § 1512(c) suggest that Congress intended that provision to apply only to document destruction.  See Miller, 2022 WL 823070, at *13–14; but see Montgomery, 2021 WL 6134591, at *15–16 (reaching the opposite conclusion from the same materials).  In this Court's view, however, the legislative history fails to point clearly one way or the other on this specific question.  See Caldwell, 2021 WL 6062718, at *16 ("[T]his legislative history says nothing about whether Congress meant for section 1512(c)(2)'s catch-all to reach beyond acts affecting evidence.").  On the one hand, several senators specifically mention document shredding when discussing the effects of § 1512(c).  See, e.g., 148 Cong. Rec. S6545 (daily ed. July 10, 2002) (statement of Sen. Lott) (stating that the amendment "would enact stronger laws against document shredding"); id. at S6546 (statement of Sen. Biden) (summing up the amendment as "making it a crime for document shredding"). On the other hand, senators also used broader language, moving smoothly between references to obstruction generally and to document destruction in particular.  See id. at S6550 (statement of Sen. Hatch) ("[T]he amendment strengthens an existing federal offense that is often used to prosecute document shredding and other forms of obstruction of justice.").

These contradictory indications, combined with the general dearth of legislative history materials, lead the Court to place little weight on § 1512(c)(2)'s legislative history.  Nonetheless, two considerations persuade the Court that these floor statements slightly favor the broader reading of § 1512(c)(2).  First, the Court has difficulty believing that Congress, having identified both the existence and the scope of the direct obstruction loophole, would nonetheless decide to leave it mostly open.  See Montgomery, 2021 WL 6134591, at *16 ("[I]t is unlikely that Congress was

23

concerned with only the type of document destruction at issue in the <u>Arthur Andersen</u> case. . . . [T]here is no reason to believe that Congress intended to fix that problem only with respect to the availability or integrity of evidence." (internal quotation marks and citation omitted)); <u>Caldwell</u>, 2021 WL 6062718, at *16 ("Congress's undisputable intention to broaden existing law surely does not justify a narrowed construction.").  Second, only if the legislators understood the amendment to apply broadly do <u>all</u> of the various floor statements make sense.  If Senator Hatch, for instance, thought that the new provision was only about document destruction, then his description of § 1512(c) as "strengthen[ing] an existing federal offense that is often used to prosecute document shredding <u>and other forms of obstruction of justice</u>," 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (emphasis added), would be quite strange.  On the other hand, if the amendment was understood to cover all forms of obstruction but also single out document shredding in paragraph (c)(1), then comments referring to shredding remain perfectly explicable as a reference to the particular form of obstruction then in the news.  But although the legislative history supports the broader interpretation of § 1512(c)(2) only modestly, it certainly does not provide sufficient evidence going the other way to justify discarding the provision's broad natural meaning.

In sum, nothing about § 1512(c)(2)'s context, structure, or purpose justifies overthrowing the provision's ordinary meaning.  Although subsection (c)'s prohibitions on direct obstruction do overlap with pre-existing provisions covering indirect obstruction, that overlap is not only explicable but inevitable.  And what the Court can divine of Congress's intent with respect to § 1512(c)(2) confirms rather than contradicts the provision's broad ordinary meaning.  In this Court's view, Congress set out to close the direct obstruction loophole in full, with paragraph (c)(1) singling out one form of obstruction of particular concern—document shredding—and paragraph

(c)(2) closing the rest of the gap by borrowing expansive language from sections 1503 and 1505 to prohibit all other forms of direct obstruction.  Such an intention matches the ordinary meaning of § 1512(c)(2)'s words.

## **Conclusion**

In the Court's view, the government's broad reading of § 1512(c)(2) is the correct interpretation of the statute.  Applying every word's ordinary meaning, paragraph (c)(2) prohibits acts which obstruct, influence, or impede an official proceeding "in a different way" from the interference with documents or evidence covered by paragraph (c)(1), regardless of how that obstruction is accomplished.  Although "otherwise" may sometimes mean "in a different but fundamentally similar way," this is not one of those times.  Section 1512(c)(2) is its own, grammatically independent statutory provision set off from paragraph (c)(1) by a semicolon and line break.  These structural features suggest that § 1512(c)(1) and § 1512(c)(2) "have separate meanings," Loughrin, 573 U.S. at 359, and they render the ejusdem generis canon and the Supreme Court's decision in Begay inapposite.  Furthermore nothing in the statute's context, structure, or history changes this conclusion—to the contrary, § 1512 is entirely sensible as written if Congress meant for paragraph (c)(2) to prohibit all forms of obstructive conduct.  Indeed, the Court concludes that the broader interpretation is significantly more plausible than the narrow reading advanced by Judge Nichols and by McHugh here.

Accordingly, since the Court has arrived at a superior interpretation of § 1512(c)(2) using traditional tools of statutory interpretation, the rule of lenity may not be applied.  "[T]o invoke the rule of lenity, a court must conclude that 'there is a grievous ambiguity or uncertainty in the statute,'" United States v. Burwell, 690 F.3d 500, 515 (D.C. Cir. 2012) (en banc) (quoting Muscarello v. United States, 524 U.S. 125, 139 (1998))—"[t]he simple existence of some statutory

ambiguity is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree," id. (cleaned up) (quoting Muscarello, 524 U.S. at 138). In short, the rule of lenity is relevant only when, "after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what Congress intended." Muscarello, 524 U.S. at 138 (internal quotation marks and citation omitted); accord United States v. Griffin, 549 F. Supp. 3d 49, 57–58 (D.D.C. 2021) (McFadden, J.) (stating that the rule of lenity "comes into frame only when a court has exhausted all canons of statutory construction and is left with only a coin flip"). This Court has "seiz[ed] everything from which aid can be derived," Muscarello, 524 U.S. at 138 (citation omitted), and it has reached not a guess but a conclusion: § 1512(c)(2) applies to all forms of obstruction of an official proceeding.

For these reasons, the Court will deny McHugh's renewed Motion to Dismiss Count Five of the Superseding Indictment. An order to that effect will accompany this opinion.

/s/

JOHN D. BATES
United States District Judge

Dated: May 2, 2022