**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Case No.: 1:21-cr-00091-RCL** |
| **CRAIG MICHAEL BINGERT, ISAAC STEVE STURGEON, and TAYLOR JAMES JOHNATAKIS,** | |
| **Defendants.** | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO SEVER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Response in Opposition to Defendant Isaac Sturgeon's Motion to Sever (Dkt. Entry 79), which was joined by Defendant Craig Bingert (Dkt. Entry 89). Defendants contend that the charges against them were misjoined with those against their codefendants in violation of Federal Rule of Criminal Procedure 8(b) and ask the Court to sever the cases for trial under Rule 14. However, as described in greater detail below, the defendants were properly joined in this case. Additionally, a Rule 14 severance is inappropriate here when defendants have failed to show a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. Therefore, the Court should deny defendants' motions.

**FACTUAL BACKGROUND**

The U.S. Capitol is secured 24 hours a day by the United States Capitol Police ("UCSP"). Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

1

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020 ("the Certification"). The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Michael R. Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.

Defendants Isaac Sturgeon and Craig Bingert are two of the individuals who unlawfully entered the grounds of the U.S. Capitol and who have been charged with various crimes relating to the attack on the Capitol. *See* Second Superseding Indictment, Dkt. Entry 53.

As detailed in the Government's Memorandum in Opposition to Defendants' Motions to Dismiss (Dkt. Entry 60), at approximately 2:46 p.m. on January 6, 2021, defendants Isaac Sturgeon, Taylor Johnatakis, and Craig Michael Bingert were at the front of a mob on the west terrace of the U.S. Capitol grounds facing a line of D.C. Metropolitan Police Department ("MPD") officers. The MPD officers were wearing body worn camera ("BWC"), and the defendants were in clear view of several officers' BWC.  Below is a still image of BWC footage depicting the defendants who were standing side by side. Defendant Sturgeon is the individual within the red circle. Defendant Bingert is enclosed in the blue circle and defendant Johnatakis is in the green circle.



As depicted above, between the officers and the defendants were metal police barricades. Johnatakis waved members of the mob forward toward the barricaded line of MPD officers and, using the bullhorn attached to his backpack, yelled at the surrounding crowd, "push them out of

here, we're just using our bodies!" At approximately 2:46 p.m., Johnatakis used his bullhorn to direct the crowd to breach the metal barriers. Specifically, Johnatakis stated, "One foot! 1, 2, 3 go!" On his count, Sturgeon and Bingert, who were still standing next to Johnatakis, grasped the metal barricade and began to push it against the line of MPD officers. Below is a still image from BWC depicting all three codefendants grasping the barricade and pushing it against MPD officers:



After a few seconds of concerted pushing, the defendants raised the barricade high, presumably in an effort to move underneath it. Below is a still image from BWC depicting Sturgeon attempting to duck under the metal barricade after the defendants worked together to raise it:



Similarly, below is a still image from BWC footage showing Bingert also ducking below the metal barricade as officers attempted to bring it back down to control the crowd:



For several seconds, a fight ensued between the defendants and other members of the mob, and MPD officers. Ultimately, MPD officers were able to successfully stop the defendants and

other rioters from breaking the line of officers by utilizing both physical force and chemical irritants.

After the assault, Bingert remained in the area for several more minutes. He turned around and faced the crowd while waving a large American flag as the crowd taunted the police line and chanted slogans such as "fuck the police." Sturgeon also remained in the area. Several minutes after the assault, BWC captured Sturgeon approaching law enforcement officers and handing them a large object.

As a result of their actions on January 6, 2021, all three defendants were charged in the Second Superseding Indictment with each of the following:

- Count One: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2;

- Count Two: Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1);

- Count Three: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);

- Count Four: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1);

- Count Five: Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);

- Count Six: Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4);

- Count Seven: Obstructing, or Impeding Passage Through or Within the Grounds or Any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(E); and

- Count Eight: Engaging in an Act of Physical Violence in the Grounds or Any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

## **ARGUMENT**

The cases against defendants Bingert, Sturgeon, and Johnatakis are properly joined. In cases with multiple defendants and multiple offenses, the "weight of authority in this circuit and

elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses." *United States v. Wilson*, 26 F.3d 142, 153 n. 4 (D.C. Cir. 1994) (citations omitted); *see also United States v. Brown*, 16 F.3d 423, 427 (D.C. Cir. 1994); *United States v. Perry*, 731 F.2d 985, 989 (D.C. Cir. 1984); *United States v. (Melvin) Jackson*, 562 F.2d 789, 793-94 (D.C. Cir. 1977). Rule 8(b) provides:

> JOINDER OF DEFENDANTS. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or *in the same series of acts* or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. Crim. P. 8(b) (emphasis added). "Rule 8 not only may shield a party from prejudicial joinder but also serves to protect a variety of other interests served by joint trials including the interests in 'conserv[ing] state funds, diminish[ing] inconvenience to witnesses and public authorities, and avoid[ing] delays in bringing those accused of crime to trial.'" *Brown*, 16 F.3d at 428 (internal citations and quotations omitted). "There is a preference in the federal system for joint trials." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019). This Circuit construes Rule 8(b) broadly in favor of joinder. *See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991); *United States v. Jackson*, 562 F.2d 789, 796-97 (D.C. Cir. 1977) (Rule 8 is "interpreted broadly in favor of initial joinder"). Thus, it is "difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)." *Nicely*, 922 F.2d at 853.

The propriety of joinder "is determined as a legal matter by evaluating only the 'indictment [and] any *other pretrial evidence offered by the Government*.'" *United States v. Carson*, 455 F.3d 336, 372 (D.C. Cir. 2006) (emphasis added; internal citations omitted). Joinder under Rule 8(b) "is appropriate if there is a 'logical relationship between the acts or transactions' so that a joint

trial produces a 'benefit to the courts.'" *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996) (quoting *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)).

Defendants who are properly joined under Rule 8 "may seek severance under Rule 14, which provides that '[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.'" *United States v. Wilson*, 605 F.3d 985, 1015 (D.C. Cir. 2010) (quoting Fed. R. Crim. P. 14(a)). Rule 14 "does not require severance even if prejudice is shown," and district courts "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). Indeed, district courts retain "significant flexibility to determine how to remedy a potential risk of prejudice, including ordering lesser forms of relief such as limiting jury instructions." *Bikundi*, 926 F.3d at 780 (citing *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011)); *see United States v. Butler*, 822 F.2d 1191, 1194 (D.C. Cir. 1987) (acknowledging trial judges are given great latitude to balance interests, including to preserve judicial and prosecutorial resources, and denying defendant's motion to sever).

Once multiple defendants are properly joined in the same indictment under Rule 8(b), "[d]istrict courts should grant severance" under Rule 14 "sparingly because of the 'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors.'" *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (quoting *United States v. Mardian*, 546 F.2d 973, 979 (D.C. Cir. 1976) (*en banc*)). The relevant portion of Rule 14 reads as follows:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court

> may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). Although "the standard of 'appears to prejudice a defendant' set out in Rule 14(a) for consideration of severance, does not, on its face, provide an onerous test, the discretion afforded to district courts must be exercised with appreciation of the policy reasons favoring joinder." *United States v. Bikundi*, 14-cr-30 (BAH), 2016 WL 912169, at *42 (D.D.C. Mar. 7, 2016). In fact, the D.C. Circuit has instructed that for severance to be proper "[t]here must be a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Bostick*, 791 F.3d 127, 152-53 (D.C. Cir. 2015) (citation and punctuation omitted); *see also United States v. Glover*, 681 F.3d 411, 417 (D.C. Cir. 2012) (affirming district court's denial of defense motion to sever trial citing same standard). Accordingly, severance is not required simply because a defendant might have a better chance of acquittal if tried separately. *See United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991). Salient factors the Court should consider, and which militate against severance, include whether separate trials would involve (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal conduct. *See United States v. Manner*, 887 F.2d 317 (D.C. Cir. 1989).

**I.   Joinder is appropriate and severance is unnecessary because the defendants participated in the same "series of acts" and the evidence against them is largely the same.**

The defendants were properly joined because Sturgeon, Johnatakis, and Bingert not only all participated in the attack on the U.S. Capitol but they also participated in the same "series of acts" when they worked together to push the metal police barricade against officers in an effort to breach the police line at the U.S. Capitol. Contrary to Sturgeon's claims, the evidence shows that the three defendants acted in unison: they stood side by side and followed the directions of

Johnatakis, each grabbing the metal barricade at approximately the same time and then pushing against officers after Johnatakis counted down from three. The government thus anticipates that the majority of witnesses and evidence that it will present will be largely the same for all defendants.[1] The "'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors,'" *Celis*, 608 F.3d at 844, thus apply to this case.

That the defendants are not charged with conspiracy is of no importance. *See United States v. Gbemisola*, 225 F.3d 753, 760 (D.C. Cir. 2000); *United States v. Rittweger*, 524 F.3d 171, 177-78 (2d Cir. 2008). What matters is that the defendants' actions during their attack on officers within a narrow, enclosed area and during a circumscribed time period amounted to their "participat[ion] in the … same series of actions …, constituting an offense or offenses." Rule 8(b). The overlap in the charged conduct triggers "the presumption and common practice [that] favor trying together defendants who are charged with crimes arising out of a common core of facts." *United States v. De La Paz-Rentas*, 613 F.3d 18, 23 (1st Cir. 2010). Additionally, each defendant is charged with furthering a civil disorder, which "like a conspiracy, requires multiple people." *United States v. Patrick McCaughey et al.*, No. 1:21-CR-00040 (TNM), 2022 WL 1604655, at *2 (D.D.C. May 20, 2022). Thus, defendants worked together, and it is appropriate for them to be tried together.

Sturgeon cites *United States v. Jackson* as support for his position that the parties are improperly joined, but that case is inapposite. 562 F.2d 789 (D.C. Cir. 1977). As opposed to the facts in *Jackson*, there is a logical link between the defendants' conduct here: the defendants worked together to commit the same offenses – i.e. pushing a metal police barricade against police officers in joint effort to obstruct, assault, or otherwise impede those officers with the goal of

---

[1] However, at this stage of the litigation, the government's investigation is still ongoing, and additional evidence may be developed against one or more of the defendants.

interrupting the certification of the election results. *See e.g.*, *McCaughey*, 2022 WL 1604655, at *2 (denying motion to sever in a case charging defendants with crimes that occurred on January 6, 2021 and finding that a "clear logical relationship" existed between the defendants' acts when "defendants allegedly battled police officers in the same location and at the same time."). Absurdly, defendant's motion acknowledges that the defendants committed the same offense but claims that is not enough for the defendants to be joined. Dkt. Entry 79 at 5. However, the explicit language of the Rule undermines that argument.

Defendant's motion also confuses permissible joinder with mandatory joinder, arguing that if Sturgeon was properly joined "then hundreds of defendants in that area within an ear shot of Mr. Johnatakis should have also been included in this indictment." *Id.* But that is not the standard. As the *Jackson* case notes, "Rule 8 is permissive, not mandatory." *Id.* at 797. Furthermore, the government's argument that joinder is proper here is not just premised on the simple fact that each defendant participated generally in the riot at the U.S. Capitol. But also on the fact that these three defendants worked together at the same time, in the same place, and using the same implement – i.e. a medical barricade – to interfere with and assault officers in an effort to disrupt the Certification.

Similarly, Sturgeon argues the government has "failed to establish why it needs to join these defendants to prove its case against each co-defendant." Again, defendant misstates the standard under Rule 8(b). The government does not have to show that it is *has* to try defendants together to prove its case. It only needs to show there is a benefit to the courts by trying defendants together. Here, the clear benefit is the substantial overlapping evidence, namely: (1) the footage of the defendants' crimes; (2) testimony from victim officers; and (3) testimony from common "overview" witnesses including witnesses from the U.S. Capitol Police and U.S. Secret Service.

Defendants also utterly fail to identify any potential prejudice that they will suffer if tried together, much less a "serious risk" that a specific trial right would be compromised by a joint trial or that the jury would be confused by a joint trial. Given the strong interest in judicial efficiency presented by a joint trial and the lack of showing of any prejudice, the three defendants should be tried together.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Government respectfully requests that defendant Sturgeon's motion to sever be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Kaitlin Klamann*
KAITLIN KLAMANN
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
IL Bar No. 6316768
(202) 252-6778
Kaitlin.klamann@usdoj.gov